SO ORDERED: July 20, 2012.



James K. Coachys
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ANTHONY PETER PAGE, | ) | Case No. 10-10728-JKC-7A |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| JENICE GOLSON-DUNLAP, as the | ) | |
| Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 11-50341 |
| | ) | |
| JENNIFER PAGE, | ) | |
| | ) | |
| Defendant. | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on Defendant Jennifer Page's ("Jennifer") Motion for

Summary Judgment on Plaintiff Jenice Golson Dunlap's Complaint (the "Complaint"). Having

reviewed the parties' respective submissions, the Court issues the following Findings of Fact and

Conclusions of Law.

## Findings of Fact

1. Debtor Anthony Peter Page ("Debtor") filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on July 19, 2010 (the "Petition Date").

2. Jennifer is the wife of Debtor.

3. Prior to July 15, 2009, Debtor and Jennifer maintained a joint account at Chase Bank (the "Chase Account"). Historically, Tony was the primary breadwinner in the family. Until mid-2009, his salary was usually sufficient to pay household expenses and such expenses were paid from the Chase Account.

4. During the course of her marriage, Jennifer stayed at home to raise two children. She also started two businesses, Marketing Unlimited and Beads for Needs.

5. On or about July 15, 2009, Jennifer opened a checking account solely in her name at KeyBank (the "KeyBank Account").

6. On the Petition Date, the KeyBank Account's balance was $41,732.59 (the "KeyBank Funds").

7. On or about April 20, 2009, Debtor deposited $30,000.00 of a $36,000.00 check payable solely to him[1] from Page Point Development, LLC into the Chase Account. The funds were a refund of a deposit paid for a condominium in the Villagio at Page Pointe.

8. On July 15, 2009, Jennifer wrote a check against the Chase Bank Account payable

---

[1] While Jennifer suggests in her supporting affidavit that the refund was paid to both her and Debtor, the check was payable only to Debtor.

2

to her in the amount of $25,000.00.[2]  The check was then deposited into the KeyBank Account.

9.  On or after August 21, 2009, Debtor and Jennifer received a federal tax refund check payable to them jointly in the amount of $34,120.00 for the 2008 tax year. Such funds were deposited into the Chase Account on September 3, 2009. On September 29, 2009, Jennifer wrote a check against the Chase Bank Account payable to herself in the amount of $27,240.26. The check was then deposited into the KeyBank Account.

10.  On or after April 30, 2010, Debtor and Jennifer received a federal tax refund check payable to them jointly in the amount of $29,436.00 for the 2009 tax year. The check was deposited into the KeyBank Account on May 11, 2010.

11.  Beginning on or about December 10, 2009, a portion of Debtor's weekly paycheck was deposited, by what appears to be direct deposit, into the KeyBank Account.

12.  On June 19, 2009, Debtor was named as a defendant in *Williams v. Page III, LLC*, Cause No. 2009 CA 010289 NC in Sarasota County, Florida. A judgment was issued against him on or about July 19, 2010, for $250,000.00.

13.  On July 23, 2009, Debtor was named as a defendant in *First Internet Bank of Indiana*

---

[2]  Throughout the Trustee's supporting briefs and in the supporting affidavit of Casey Gresk, the Trustee repeatedly states that Debtor himself transferred or deposited certain funds into the KeyBank Account. For instance, Mr. Gresk's affidavit states that "[D]ebtor transferred the remaining $27,240.26 of the joint tax return refund from the Chase Bank Account to Jennifer Page's Key Bank account." The documentary evidence before the Court, however, shows that all of the checks written against the Chase Account were written by Jennifer to herself and then deposited into the KeyBank Account. Thus, the Court cannot find, without additional evidence, that Debtor himself voluntarily effectuated such transfers. Of course, involuntary transfers are avoidable under § 548 as well.
    It is also unclear from the bank records designated on summary judgment whether certain of the deposits into the KeyBank Account that are at issue, e.g, the December 9, 2009 deposit of the couple's 2009 federal tax refund, were effectuated by Jennifer or Debtor. Jennifer's own affidavit is vague on this point. Without additional evidence, the Court cannot conclude one way or another whether the transfers were directly or indirectly, voluntarily or involuntarily, made by Debtor.

*v. Page V, LLC*, Cause No. 49D14-0907-CC-034554, in Marion County, Indiana.

14. On February 18, 2010, Debtor was named as a defendant in Wachovia Bank, N.A. *v. Page IV, LLC*, Cause No. 10-0725-CA, in Charlotte County, Florida.

15. Having obtained a judgment against Debtor, First Internet Bank of Indiana garnished Debtor's bank accounts, including the Chase Account , on April 10, 2010. Such attachment reduced the balance of the Chase Account to $0.01.

16. On or about June 11 2009, a state tax refund in the amount of $5,597.00 was deposited into the KeyBank Account

## Conclusions of Law

1. The Trustee's Complaint is stated in two counts:  Per Count I, the Trustee seeks turnover of the KeyBank Funds as property of the estate under 11 U.S.C. § 541. Per Count II, she seeks to avoid an unidentified number and amount of alleged transfers from Debtor to Jennifer from July 19, 2006, to July 19, 2010, pursuant to 11 U.S.C. §§ 544 and 548 under theories of both actual and constructive fraud. Per Count II, the Trustee also seeks to recover those transfers from Jennifer pursuant to 11 U.S.C. § 550.

2. In her Summary Judgment Motion, Jennifer argues that there are no genuine issues of material law and that the Trustee is not entitled to relief under either Count I or Count II.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

4. Under Federal Rule of Civil Procedure 56, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

4

show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). With a motion for summary judgment, the burden rests on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" to cite evidence of a genuine factual dispute precluding summary judgment. *Id.* at 322-23. If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material question, then the court must enter summary judgment against it. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986)).

### **Count I: Turnover**

5. Pursuant to 11 U.S.C. § 341(a)(1), the bankruptcy estate is generally comprised of the "legal and equitable interests of the debtor in property as of the commencement of the case."

6. Jennifer insists she was the sole owner of the KeyBank Account as of the Petition Date and that the Account is, therefore, not property of the estate. In response, the Trustee cites to the definition of "joint account" under Indiana Code § 32-17-11-4 and to the statutory presumption under Indiana Code § 32-17-11017 that "[u]nless there is clear and convincing evidence of a different intent, during the lifetime of all parties, a joint account belongs to the parties in the proportion to the net contributions by each party to the sums on deposit."

7. The Court fails to understand the Trustee's reliance on these statutory provisions. The undisputed facts show, as Jennifer insists, that she was the sole owner of the KeyBank Account at all relevant times, including as of the Petition Date. The undisputed evidence establishes that the

5

KeyBank Account is not, and never was, a joint account. Accordingly, the Account is not subject to the presumption set forth in Indiana Code § 32-17-11-17.

8.     The Trustee has offered no other basis upon which the Court may conclude that Debtor has a legal or equitable interest in the KeyBank Account. There otherwise being no factual dispute, the Court concludes that Jennifer is entitled to judgment in her favor as a matter of law on Count I.

### Count II:  Fraudulent Transfer

9.     As stated above, the Trustee seeks to avoid certain transfers allegedly made by Debtor to Jennifer under theories of both actual and constructive fraud pursuant to Code §§ 544[3] and 548 avoidance powers.

10.     The Court begins its discussion with the Trustee's claim for actual fraud. Pursuant to Section 548(a)(1)(A), the trustee "may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily– (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted . . . ."

11.     Jennifer argues that the Trustee cannot prevail on her claim for actual fraud because the funds allegedly transferred from Debtor to Jennifer were used to pay family and household

---

[3] It appears from the parties' respective briefs that all of the transfers at issue occurred on or after July 15, 2009. As such, the Trustee need not resort to § 544 and to the Indiana Uniform Fraudulent Transfer Act's longer look-back period to avoid any of the subject transfers. As such, the Court looks only to Code § 548(a) in ruling on Jennifer's summary judgment motion.

expenses.

12. The Court disagrees that this fact alone defeats the Trustee's claim for actual fraud. The Trustee need only establish that Debtor transferred money to Jennifer in an effort to hinder, delay **or** defraud creditors. The fact that he may have transferred money to Jennifer in an effort to keep their household afloat does not insulate the transfers from the Trustee's claim. The undisputed facts show that the KeyBank Account was opened immediately after Debtor was sued in a Florida state court. Jennifer herself admits in her supporting affidavit that she opened the KeyBank Account because she "was very concerned about the state of [their] financials, payment of the house expenses, and [her] ability to provide shelter and food for the children should [their] marriage fail." She further states that she opened the KeyBank Account because of "the financial struggles which had been precipitated by the downturn in the real estate market and constructions markets which dramatically and negatively impacted Tony's earning." From these statements, the Court can reasonably infer that the KeyBank Account was used in an effort to shield at least some of Debtor's money and income from certain of his creditors. The mere fact that the money was used to pay other creditors does not necessarily defeat the Trustee's claim for actual fraud under § 548(a)(1)(A).

13. As Jennifer herself points out in her supporting brief:

> [A]ctual harm is not required; the trustee must show that the debtor acted with the intent to hinder, delay or defraud creditors. "While ordinarily there is no reason for a trustee to seek, or a court to exercise its power, to avoid a transfer which has not harmed anyone, it is to be emphasized that fraud may be committed under section 548(a)(1) even though a fairly equivalent consideration may pass to the transferor and even though creditors are merely hindered or delayed."

*Defendant's Memorandum of Law in Support of Motion for Summary Judgment* at 7 (quoting *In re Scott*, 227 B.R. 834, 843 (S.D.Ind.1998)(quoting *In re Sherman*, 67 F.3d 1348, 1355 (8th Cir.1995)).

14.     For the above stated reasons, the Court cannot conclude that Jennifer is entitled to judgment in her favor as a matter of law on the Trustee's claim for actual fraud. Factual issues remain as to Debtor's intentions with respect to the transfers at issue.

15.     In her supporting brief, Jennifer offers this additional argument in defense of the Trustee's claim for actual fraud:

> Furthermore, the "transfers" to Jennifer were not "transfers" within the meaning of Section 548(a). Jennifer was simply a conduit. She used the transferred funds to pay the family's household and living expense. She expended all of the money contributed by Tony, plus approximately $50,800 of her own funds paying such expenses.

*Defendant's Memorandum of Law in Support of Motion for Summary Judgment* at 9.

16.     Jennifer's use of the term "conduit" is arguably misplaced. The issue of whether a party was a "conduit" or a "transferee" more appropriately arises in the context of a claim for recovery of an avoided transfer under § 550(a). Section 550(a) provides that a transfer avoided under § 548 may be recovered from "the initial transferee of such transfer or the entity for whose benefit such transfer was made; or any immediate or mediate transferee of such initial transferee."

17.     While the term "transferee" is not defined in the Code for purposes of Section 550(a), the Seventh Circuit has held that at a minimum, a "transferee" has "dominion over the money or other asset, the right to put the money to one's own purposes." *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir.1988); *see also In re Doctors Hosp. of Hyde Park, Inc.*, 373 B.R. at 72. In contrast, a "conduit" is "merely a facilitator. It does not assert sufficient control over the funds passing through its hands to be considered a transferee of the transfer." *In re Dominion Corp*. 199 B.R. 410, 413 (9th Cir. BAP 1996).

18.     As indicated above, Jennifer raised the issue of whether she was merely a conduit in

8

defense of the Trustee's § 548(a)(1)(A) action, not in defense of the Trustee's claim for recovery under § 550. That problem aside, Jennifer has offered no evidence, undisputed or otherwise, that speaks to how much dominion or control she had over the funds allegedly transferred to her from Debtor. While it is undisputed that she used them for household expenses, that alone does not mean that she had insufficient control over them. A triable issue of fact remains as to whether she was a transferee or mere conduit.

19.    The Trustee has also asserted a claim for "constructive fraud" under § 548(a)(1)(B). That provision provides that a trustee may avoid a transfer of an interest of the debtor in property that was made within two years before the date of the petition if the debtor voluntarily or involuntarily:

> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> > (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> >
> > (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> >
> > (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> >
> > (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

20.    To prevail under § 548(a)(1)(B), the Trustee must prove, among other things, that Debtor received "less than reasonably equivalent value." *In re Bundles*, 856 F.2d 815, 816-17 (7th Cir.1988). The determination of "reasonably equivalent value" is not made by a fixed mathematical formula, but rather by a comparison of the value of what was transferred to the defendant to the value

9

of what the debtor received in exchange. *Barber v. Golden Seed Company, Inc.*, 129 F.3d 382 (7th Cir.1997).

21. On summary judgment and in defense of the Trustee's constructive fraud claim, Jennifer argues that Debtor received reasonably equivalent value for the alleged transfers. More specifically, she argues:

> [Debtor] received more than reasonably equivalent value for any transfers he made to the [KeyBank] Account because Jennifer used all of the transferred funds . . . to pay the family's household and living expenses during the period from July 15, 2009 through the Petition Date. The expenses paid by Jennifer were obligations for which Tony was otherwise obligated contractually or under the doctrine of necessaries."

*Defendant's Memorandum of Law in Support of Motion for Summary Judgment* at 10.

22. As articulated by the Indiana Supreme Court, the doctrine of necessaries operates as follows:

> Each spouse is primarily liable for his or her independent debts. Typically, a creditor may look to a non-contracting spouse for satisfaction of the debts of the other only if the non-contracting spouse has otherwise agreed to contractual liability or can be said to have authorized the debt by implication under the laws of agency. When, however, there is a shortfall between a dependent spouse's necessary expenses and separate funds, the law will impose limited secondary liability upon the financially superior spouse by means of the doctrine of necessaries. We characterize the liability as "limited" because its outer boundaries are marked by the financially superior spouse's ability to pay at the time the debt was incurred. It is "secondary" in the sense that it exists only to the extent that the debtor spouse is unable to satisfy his or her own personal needs or obligations.

*Bartrom v. Adjustment Bureau, Inc.*, 618 N.E.2d 1, 8 (Ind.1993).

23. In response, the Trustee argues only that the doctrine of necessaries "does not permit the financially superior spouse to avoid paying his debts by transferring his funds, that could have been used in paying his debts, to his spouse." *Plaintiff's Response Brief* at 6.

24. In the Court's opinion, the Trustee's argument misses the point of Jennifer's position

10

in that it does not squarely address whether Debtor received reasonably equivalent value from Jennifer's payment of the couple's household expenses, be they expenses for which Debtor was directly liable or for which he could be found liable under the doctrine of necessaries. The mere fact that Debtor arguably avoided paying some of his creditors by virtue of the alleged transfers to Jennifer does not mean that Debtor received no benefit from the transfers.

25. The Court agrees with Jennifer that Debtor received reasonably equivalent value to the extent the alleged transfers were used to pay creditors to which Debtor was, himself, contractually bound, as well as those creditors to which Jennifer was contractually bound and to which Debtor could be held liable via the doctrine of necessaries. *See Schilling v. Montalvo (In re Montalvo)*, 333 B.R. 145, 150 (Bank.W.D.Ky.2005) (Debtor received reasonably equivalent value for transfers to his non-debtor wife because the funds were used to pay his ordinary and necessary living expenses and that of his family).

26. Admittedly, the Court has no evidence regarding which specific household expenses were paid from the KeyBank Account and in what amount. The only evidence before the Court is Jennifer's own statement that the alleged transfers were used to pay household and family expenses. This would be problematic except for that the fact that the Trustee offered *no* contrary evidence on summary judgment and rested on her argument that the doctrine of necessaries simply does not apply.[4] Without such evidence, the Trustee has failed to create a genuine issue of material fact as to whether Debtor received reasonably equivalent value for the alleged transfers, despite the fact that it was clearly her burden to do so. *See Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th

---

[4] The Trustee also did not address the other part of Jennifer's argument, i.e., that Debtor received reasonably equivalent value because some of the allegedly transferred funds were used to pay expenses for which he was directly liable.

11

Cir.2000) ("To defeat a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in his pleadings, but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial.").

27.     Accordingly, the Court concludes that Jennifer has established that she is entitled to judgment as a matter of law on the Trustee's claim for constructive fraud under 11 U.S.C. § 548(a)(1)(B).

### Conclusion

Based on the foregoing, the Court grants Jennifer's Motion for Summary Judgment with respect to Count I of the Trustee's Complaint and with respect Count II of the Complaint to the extent it states a claim for constructive fraud under § 548(a)(1)(B). Triable issues of fact remain with respect to the Trustee's claim for actual fraud under § 548(a)(1)(A) and for recovery under § 550.

A Judgment Order consistent with the above will be issued contemporaneously herewith. The Court will issue a scheduling order with respect to the remaining claims in the near future.

###

Distribution:

Paul D. Gresk
Thomas G. Burroughs
Randolph A. Leerkamp
David R. Krebs
UST